AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
DEC 06 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
    Black Samsung Phone, )
IMEI 355720100266257, described more particularly in )
    Attachment A-2 )

Case No. **19MJ5433**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A-2

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, 963 | Importation of Controlled Substances; Conspiracy to Import Controlled Substances |

The application is based on these facts:

SEE AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI Special Agent Charles Hartsfield
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/5/19

City and state: San Diego, CA

Honorable William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Black Samsung Phone
    IMEI 355720100266257
    ("**Target Device 2**" as noted in Attachment A-2)

**Target Device 2** is currently in the possession of the Homeland Security Investigations, located at 2255 Niels Bohr Ct, San Diego, CA 92154.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the **Target Devices** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices** for evidence described below. The seizure and search of the **Target Devices** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 16, 2019 through October 15, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

## AFFIDAVIT

I, Special Agent Charles Hartsfield, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> Gold and Silver Samsung Phone
> IMEI 359270075323549
> ("**Target Device 1**" as noted in Attachment A-1)
>
> Black Samsung Phone
> IMEI 355720100266257
> ("**Target Device 2**" as noted in Attachment A-2)

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952 and 960, as further described in Attachment B.

2. The requested warrants relate to the investigation and prosecution of John Edward HOFFMAN for importing approximately 6.12 kilograms (13.49 pounds) of methamphetamine from Mexico into the United States. *See U.S. v. Hoffman*, Case No. 19-MJ4497 (S.D. Cal.) at ECF No. 1 (Complaint). The **Target Devices** are currently in the HSI evidence vault located at 2255 Niels Bohr Ct, San Diego, CA 92154.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since March 1, 2003. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

5. During my tenure with HSI, I have participated in the investigation of various

drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.

6. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9. On October 15, 2019, at approximately 3:13 a.m., HOFFMAN entered the United States on foot, via the pedestrian lanes, at the San Ysidro, California, Port of Entry.

10. During primary inspection, HOFFMAN presented a United States Passport bearing his name. CBP Officers Chavez and Williams were then assigned to the pedestrian lanes at the San Ysidro POE. In response to Officer Chavez's questions, HOFFMAN twice said that he was not bringing anything into the United States. In response to Officer Williams's questions, HOFFMAN said that he was going to San Diego. Officer Chavez received a computer-generated alert for HOFFMAN and referred him to secondary inspection.

3

1    11.    In secondary inspection, CBP Officer Vera conducted a pat-down of HOFFMAN, witnessed by CBP Officer Montilla. In the pat-down, Officer Vera found thirteen packages strapped to HOFFMAN's body. Officer Chavez seized these drugs and conducted initial testing; that testing indicated the presence of methamphetamine. The total weight was approximately 6.12 kilograms (13.49 pounds).

12.    In light of the foregoing, the CBP Officers placed HOFFMAN under arrest. The CBP Officers also took possession of the packages and the **Target Devices** and held them securely until I arrived at the Port of Entry, when I effected their legal seizure. (My report does not specify which Officers took possession of the **Target Devices**, but in my training and experience, I am aware that when a person is found in possession of controlled substances at the San Ysidro POE, CBP Officers take possession of the drugs and their property and turn it over to the responding case agent. Here, I note that HOFFMAN entered the United States on foot, in possession of the **Target Devices** and the methamphetamine packages.)

13.    In light of the above facts, and my own experience and training, I submit that probable cause exists to believe that HOFFMAN was using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States. Accordingly, I request permission to search the **Target Devices** for data beginning on August 16, 2019 through October 15, 2019, the date of HOFFMAN's arrest.

## METHODOLOGY

14.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data

contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

15.  Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

16.  Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

17.  Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

**CONCLUSION**

18.  Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Device will yield evidence of HOFFMAN's violations of Title 21, United States Code, Sections 952, 960 and 963.

19. Because the **Target Devices** were seized at the time of HOFFMAN's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from August 16, 2019 through October 15, 2019.

20. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachments A-1 and A-2 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Charles Hartsfield
Homeland Security Investigations

Subscribed and sworn to before me this 5 day of December, 2019.

_____
The Hon. William V. Gallo
United States Magistrate Judge

6